# BARCELLOS *v.* GOMPERTZ
## No. 2700
May 6, 1926.                                    245 P. 700.

1. Appeal and Error.
    Reviewing court should disregard all errors that do not affect a substantial right.

2. Appeal and Error.
    Findings of trial court, supported by substantial evidence, though conflicting, will not be disturbed.

3. Sales—Finding of Trial Court, that Parties Intended Title of Property Should Pass at Time of Sale, Held Supported by Evidence.
    In action to recover possession of personal property sold defendants, finding of trial court that parties intended title should pass at time of sale *held* supported by evidence, although conflicting.

4. Sales—Admission in Evidence of Unexecuted Bill of Sale Which Defendant Sent to Plaintiff with Payment of Purchase Price, Held Not Erroneous, though Nothing Was Said About Bill, Since Parties May Have Agreed that Title Would Pass when Payment Was Made.
    In action to recover possession of personal property sold defendants, admission in evidence of unexecuted bill of sale, which defendant had prepared and sent over with check to be executed by plaintiffs, *held* not erroneous because nothing had been said about a bill of sale, since it may have been agreed that title would pass when payment was made.

5. Appeal and Error—Any Error in Admission in Evidence of Unexecuted Bill of Sale, in that Nothing Had Been Said About Such Bill, Held Not Prejudicial, where There Was Evidence that Bill Had Been Sent to Plaintiffs by Defendants.
    In action to recover possession of personal property sold defendants, any error in admission in evidence of unexecuted bill of sale *held* not prejudicial, in that nothing had been said about a bill of sale during negotiations, where there was evidence that such bill of sale had been sent to plaintiffs by defendants.

6. Appeal and Error—Any Error in Refusing to Permit Cross-Examination of Defendant as to Failure to Make Deferred Payments on Property Sold Held Not Prejudicial, where Title Passed at Time of Sale.
    In action to recover possession of personal property sold defendants, any error in refusing to permit cross-examination of defendant as to his failure to make deferred payments on the property *held* not prejudicial, where title to property passed to defendant at time of sale.

7. Appeal and Error—Overruling Motion to Strike Testimony Based on Particular Ground Will Not Be Considered on Appeal, where Reason Urged for Sustaining Motion is Different from that Assigned at Trial.
    Overruling of motion to strike testimony based upon a

particular ground in trial court will not be considered, where reason urged on appeal for sustaining motion is entirely different from that assigned at trial.

8. EVIDENCE—PERMITTING WITNESS TO TESTIFY AS TO TELEPHONE CONVERSATION WITH PLAINTIFF HELD NOT ERROR, BECAUSE TALK WAS MADE AFTER SALE WAS CONCLUDED, SINCE SUCH CONVERSATION COULD NOT CHANGE CONTRACT, AND COURT FROM CONVERSATION COULD INFER THAT A SALE WAS MADE.

In action to recover possession of personal property sold defendants, permitting witness to testify as to conversation with plaintiff *held* not error because talk was had after negotiations were concluded and property had arrived at destination, since such conversation could not change the contract, and court from conversation could infer that a sale was made.

See (1, 2, 5, 6, 7) 3 C. J. sec. 733, p. 819, n. 26; 4 C. J. sec. 2726, p. 776, n. 54; sec. 2855, p. 884, n. 37; sec. 2955, p. 975, n. 88; sec. 3190, p. 1168, n. 98, 10; (3, 4) 35 Cyc. p. 508, n. 94 (new); p. 517, n. 76; p. 518, n. 93; (6) 40 Cyc. p. 2493, n. 37.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by Frank Barcellos and others against G. H. Gompertz and others, in which the Sierra Market, Inc., intervened. From a judgment for intervener and an order denying a motion for a new trial, plaintiffs appeal. **Affirmed.**

*Mack & Green* and *A. F. Lasher,* for Appellants:

Rev. Laws 5006 prescribes that intervener shall file complaint stating grounds; file it with leave of court; serve it upon parties who have not appeared; and upon attorneys of those who have appeared. Intervener did not conform to first, second, or third requisites.

Rev. Laws 5038 was construed in State ex rel. Piper v. Gracey, 11 Nev. 223, to effect that complaint must set forth specifically each fact in issuable form which is necessary to establish right of action.

Having failed to allege title in Gompertz, intervener failed to allege any right in itself by transfer from him. Gentry v. Low, 4 Nev. 99.

Parties to action in which intervention is filed have ten days to plead, as in any other case. Rev. Laws, 5006.

If intervention should not have been allowed, evidence

relating to issues presented by it should be disregarded. Harlan v. Eureka Mining Co., 10 Nev. 92.

Practically whole of damages claimed occurred subsequently to institution of principal suit and could not be made issue in case except by proper supplemental pleading. 17 C. J. 1000. Rev. Laws 5076 prescribes proper way to plead damages.

Damages sought in answer in intervention were remote and speculative, not actual. 17 C. J. 753.

Alleged sale being fraudulent because of failure of immediate delivery and actual and continued possession (Rev. Laws, 1078), intervening company could not be protected even as purchaser for value without notice, since Rosenthal, its officer, assisted in transaction, thereby charging company with notice of all he knew, even though he did not communicate it. 14A C. J. 2350.

There was either contract for conditional sale by which seller retained title not required by statute to be in writing (35 C. J. 663) or else no contract of sale at all.

Objection that pleading fails to state cause of action or defense may be raised at any time. Neilsen v. Rebard, 43 Nev. 274.

*W. M. Kearney,* and *S. H. Rosenthal* (*Harry Swanson* on the brief), for Respondents:

Theory of amended complaint is that plaintiffs sold machinery to Gompertz upon conditional sale.

If such be fact, fraudulent representation as to insolvency of vendee is immaterial, as vendor was secured.

That complaint was called petition or answer is immaterial so long as it contained allegations sufficient to conform to statute. People ex rel. Fogg v. Parris Irrigation District (Hutchins, Intervener), 64 P. 399.

Objection that complaint in intervention does not state facts sufficient to constitute cause of intervention comes too late when first raised upon appeal. People ex rel. Attorney General v. Reis, 18 P. 309. As matter of fact, issues were joined by stipulation.

Petition was filed by leave of court; all parties accepted it as if it were called complaint, and made no

objection thereto. Marshall v. Golden Fleece Co., 16 Nev. 156. Objection to intervention because of insufficiency of complaint or want of right must be made at time, or will be considered waived. Gorham v. Heiman. 27 P. 289.

Gentry v. Low, 4 Nev. 99, is out of point because townsites require possession of lot.

Intervention must be made before trial. Rev. Laws, 5006.

Allowance or refusal of amendment will be reversed only in case court grossly abuses discretion. 31 Cyc. 368. Rev. Laws, 5084. As no damage was allowed under amendment appellants have no complaint.

Warehouse negotiations showed actual and constructive change of possession. Actual manual delivery of bulky articles is not necessary. Any act done with intent to transfer possession and dominion is sufficient. 35 Cyc. 187.

Bill of sale was not necessary, since delivery passed title in absence of contract to contrary. Sanders v. Stokes, 30 Ala. 432; Gaudette v. Travis, 11 Nev. 149.

## OPINION

By the Court, COLEMAN, C. J.:

This action was brought to recover the possession of certain personal property. The Sierra Market, Inc., intervened, and judgment was rendered in its favor. The plaintiffs appealed from the judgment and from the order denying their motion for a new trial. The parties will be referred to as they were designated in the trial court.

The plaintiffs assigned numerous errors, among them the ruling of the court on objections to the order permitting the intervention, and to other rulings in connection therewith. The plaintiffs, who resided in Yerington, were the owners of the property in December, 1923. On or about the 2d day of that month Gompertz went to Yerington, at which time he saw the plaintiffs relative to purchasing the property. The plaintiffs

agreed to take $850 for the property, half payable in cash, and the balance in four monthly payments; the theory of the plaintiffs being that they were to retain the title until the deferred payments were made, and that of Gompertz being that he was to get title on making the cash payment. The testimony is to the effect that Gompertz sold the plant to the intervener after acquiring possession of it.

1. The trial court found that the theory of the defendant and intervener as to the passing of the title was sustained by the evidence. If we sustain this finding, it is unnecessary to determine the other questions presented by the plaintiffs, since we should disregard all errors that do not affect a substantial right. Ramezzano v. Avansino, 189 P. 681, 44 Nev. 86.

2, 3. It is a well-established rule in this state that, if the findings of the trial court are supported by substantial evidence, though conflicting, such findings will not be disturbed. Dixon v. Miller, 184 P. 926, 43 Nev. 288. Let us see if the evidence as to the passing of the title is conflicting.

Frank Barcellos, one of the plaintiffs, testified in effect as follows: Gompertz and a man named Davis called to see me about the property one Sunday morning early in December, 1923. My terms were $425 cash, the balance of $425 to be paid in four monthly payments, the title to remain in us. Gompertz returned to Reno and was to let me know later if he would take the plant. Some days later he telephoned me, saying that he was going to send over a couple of men to get the plant. Two men came over, bringing Gompertz's check and a bill of sale. One of the men showed me the check, then put it in his pocket, and did not give me the check and bill of sale until after they had torn down the plant and were ready to leave. They wanted me to sign the bill of sale. I refused to do this, but gave a contract to one of the men to deliver to Gompertz.

John Barcellos, the other plaintiff, testified:

"A. He want to buy the ice plant and asked how much

I want for it, and I said $850. He said after that he got enough money to pay for it, to buy it, but he just starting business, and he just pay $425 down and get the plant and pay in four payments. The first payment $125 the 10th of January, the second payment the 10th of February $100, March $100 on the 10th, and April $100 the 10th. That is all I know about it.

"Q. Was anything else said about the terms?    A. He said—never say anything about the terms, just like that.

"Q. What did the folks say about the terms?    A. I said it is good enough if I get a mortgage on the plant.

"Q. You keep the mortgage on the property?  A. Yes, sir.

"Q. What do you mean by that?

"Mr. Kearney: Objects to that as calling for a conclusion.

"A. Keep security on the property."

This is all of the testimony on the part of the plaintiffs as to the terms of the contract.

In opposition to the testimony on behalf of the plaintiffs, Gompertz testified:

"A. I looked up Mr. Barcellos, and after a while I found him and told him I came to buy an ice machine, and he took me over and showed me the plant and what he wanted to sell. He stated a price to me, and I told him I thought it was a little high, but we finally agreed upon a price of $850, and I said that I didn't think I was quite able to pay $850 right down then and there, but, if he was willing to accept four and a quarter and four notes and give me a bill of sale for the whole complete outfit, I would buy it. He told me he would have to talk to his brother and would meet me about 4 o'clock that evening; and about 4 o'clock his brother showed up, and he says, 'Yes; we will take the proposition you offered'; and I said, 'Well, I haven't decided I want it, but I will think it over.' And I went home, and possibly a day or two later I telephoned to Mr. Barcellos and asked him if he still had the machine and if he was satisfied to sell on the terms I offered, and I told him I would send a

truck and I would give this man the money and the bill of sale and the notes, and they would be down possibly the next day or the day after. I told him possibly the next day, but that he should consider the machine sold.

"Q. What was his reply? A. It was satisfactory that he would hold the machine until the men came."

Mr. Davis, a disinterested witness, testified:

"A. Mr. Gompertz looked all the plant over and the usual discussion, and told Mr. Barcellos the terms he would purchase the ice plant under, and they were that he would pay $425 in cash and the balance in four notes, and Mr. Barcellos advised him that he would have to take it up with his partner as soon as he came back, and he would give him his answer.

"Q. Did he make any statement at that time on his own behalf? A. It apparently was agreeable to him,

"Q. Later on when Mr. John Barcellos arrived state what took place. A. Later on Mr. Gompertz and I came around, and finally Mr. Frank Barcellos came and told Mr. Gompertz that the proposition was agreeable to them, and Mr. Gompertz told them he wanted to go back to Reno before he gave them a definite answer, but, if they would hold it for a week, he was sure he would take the machine.

"Q. Did they agree to that? A. Yes, sir.

"Q. Then you left? A. Yes, sir.

"Q. Was there anything at that time said about a mortgage or conditional sales contract? A. There was no mention of it."

Mr. Rosenthal, the attorney who drew the bill of sale for the property, testified:

"I put in a long distance call for the Barcellos, and in answer to that call some one at the other end spoke, and I asked if it was Mr. Barcellos, and he stated it was, and I said, 'I am Mr. Rosenthal, the attorney for Mr. Gompertz, and I wish to take up with you the matter of the bill of sale which was promised with reference to an ice machine that Mr. Gompertz purchased from you'; and I says, 'Mr. Gompertz complains that you have not sent the bill of sale back that I prepared for him'; and

a voice on the other end stated to me that the reason they had not sent the bill of sale back was because they had been advised as soon as they had shipped the machine or the ice plant had left Yerington that it was not the proper way to handle the thing, but that they should have entered into a conditional sales contract, that they had no protection. 'Well,' I says, 'That was not your original understanding with Mr. Gompertz,' and then he says, 'That don't make any difference, we have changed our mind'; and then I said, 'Well, then you return the $425 to us, and we will redeliver the ice plant to you'; and there was a little hesitation, and then the voice at the other end said, 'Well, we will send you the bill of sale, but by God we will collect the notes too.' "

Upon the conclusion of the trial, the court expressed its views of the evidence, saying that the plaintiffs had failed to prove their case; that the two witnesses in behalf of the defendant were much more intelligent and were corroborated.

The fact is, if the testimony of John Barcellos is given its strict legal interpretation, the only inference from it is that the title was to pass, for the plaintiffs could not take a mortgage back unless it did pass. Taking into consideration the fact that Davis is a disinterested witness, that Frank Barcellos flatly denied talking with Rosenthal over the telephone until confronted with the bill for the talk from the telephone company, and the further fact that the $425 check was cashed at a time which shows that his testimony, that he did not receive it until the men sent for the plant were ready to leave, was false, we do not see how the trial court could have reached any other conclusion. But in any event, the testimony being conflicting, we cannot say that the findings are not sustained by the evidence, or that the court erred in rendering the judgment or in overruling the motion for a new trial.

In view of the finding that title to the property in question passed to Gompertz, which is amply sustained by the evidence, it is not necessary that we dispose of any of the assignments of error relative to the sale by

Gompertz to the intervener, since the plaintiffs parted with their interest in the property and could not complain of any disposition which Gompertz might make thereof.

4, 5. There is no merit in the assignment going to an alleged error in admitting in evidence the unexecuted bill of sale which Gompertz had prepared and sent over with the check to be executed by the plaintiffs. In support of this assignment, reliance is placed upon the force of the testimony in behalf of the plaintiffs to the effect that nothing was said about a bill of sale during the negotiations. Nothing may have been said about a bill of sale, and yet it may have been agreed that title would pass at the time the cash payment was made; if so, it was natural that Gompertz would send over the bill of sale. In any event, there is evidence in the record that such bill of sale was sent over by the men, and the admission of the bill of sale was in no way prejudicial.

6. It is next insisted that the court erred in refusing to allow plaintiffs' attorney to cross-examine Gompertz as to his failure to make the deferred payments on the property. We are at a loss to see how plaintiffs were prejudiced by such ruling. If title to the property passed on delivery and the payment of the $425, failure to pay the balance would not affect the situation, nor would a failure to make the deferred payments enable the court to determine what the real contract was. The court did not commit error. Nor did the court err for the same reason as claimed in assignment K.

Assignment L pertains to a ruling as to testimony of witness Davis as to a conversation which he heard. Counsel say in their brief:

"This evidence is wholly immaterial and calculated to mislead the court. That it did, in effect, have this tendency, is shown from the court's decision in which he stressed the particular conversation."

In the first place, if the testimony was immaterial, it certainly would not influence the court. In fact, the court did not stress this conversation. In alluding to this evidence, the court said:

" * * * What Davis heard in the attorney's office and what he heard over the phone, I don't think I need mention."

7. Assignment M is wholly without merit. The motion to strike the testimony was upon a particular ground. The reason urged here why the motion should have been sustained is for an entirely different reason than that assigned at the trial.

8. The next contention is that the court erred in permitting the witness Rosenthal to testify as to a telephone conversation with one of the plaintiffs, on the ground that the talk was had after the negotiations were concluded and after the property had arrived in Reno. The motion to strike made during the trial reads: "Move to strike that out as not changing the contract in any way." Counsel must stand here upon the ground assigned in the trial court. As a matter of fact, the court did not err under either contention. What was said over the telephone could not change the contract, but the reason given by plaintiff over the telephone was not on the ground that no sale had been made, but because they had been advised it was not handled properly, from which the court might have inferred that a sale was made, as contended by Mr. Rosenthal.

For the reasons given, the judgment must be affirmed, and it is so ordered.